T.C. Summary Opinion 2010-103

UNITED STATES TAX COURT

TIMOTHY MACARTHUR DAYE, SR., Petitioner, AND
MARVIS HENDERSON-DAYE, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3148-09S.              Filed July 28, 2010.

Timothy MacArthur Daye, Sr., pro se.

Marvis Henderson-Daye, pro se.

<u>Olivia J. Hyatt</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In this section 6015(e) proceeding, petitioner seeks to be relieved from a 2006 Federal income tax liability assessed against him because he filed a joint Federal income tax return for that year. Consistent with respondent's determination denying him administrative relief, petitioner's spouse, Marvis Henderson-Daye (intervenor), from whom he has been separated for over 12 months, opposes relief.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. At the time the petition was filed, petitioner and intervenor resided at separate addresses in the State of North Carolina.

Petitioner and intervenor were married in 1995; they separated in December 2007 and at the time of trial, in February 2010, were still separated. Petitioner and intervenor have one minor son. During their marriage petitioner and intervenor maintained separate financial accounts but had one joint bank account for joint items such as joint tax refunds.

Petitioner holds a bachelor of arts degree in business administration. He has taken coursework in individual

and corporate taxation as well as an H & R Block tax course. At all relevant times, petitioner has worked for Duke University as a financial analyst. During his marriage to intervenor, petitioner was the primary breadwinner, and through and including the time of trial, his average income was approximately $75,000 per year.

Intervenor holds a bachelor of arts degree in communications as well as a master's degree. On March 31, 2002, intervenor was involved in an accident and thereafter became permanently disabled; before becoming permanently disabled intervenor worked for the State of North Carolina. At the time she became permanently disabled, the State of North Carolina paid intervenor 65 percent of her salary for a 3-year period until she was approved for Social Security disability benefits.

In 2006, intervenor's request for Social Security disability benefits was approved. During the time that intervenor was awaiting approval of her request for Social Security disability benefits, she incurred credit card debt to pay for living expenses including household bills and prescriptions.

In July 2007, intervenor received a $20,000 insurance settlement resulting from the March 2002 accident. Of the $20,000 settlement, approximately $7,000 served to pay attorney's fees and the remainder was used to pay off the credit card bills that intervenor had accrued while awaiting approval for the

Social Security disability benefits.  During her marriage to petitioner, and through and including the time of trial, intervenor's average annual income was approximately $25,000.

Intervenor received a Form SSA-1099, Social Security Benefit Statement, for 2006 indicating she received disability benefits of $66,010.50.  The benefits were paid in a lump sum for years 2002 through 2005.  Of the $66,010.50, $56,109 was taxable, but no income tax was withheld.

Petitioner and intervenor filed their joint Federal income tax return for 2006 on November 26, 2007, reporting a tax liability of $11,875.  The tax return was prepared by petitioner and presented to intervenor for her review and signature.  Along with the 2006 tax return intervenor remitted a check from her individual bank account for $1,875, to bring the outstanding tax liability to $10,000.  Intervenor wrote the check at petitioner's request because he stated that the outstanding liability was her liability.[2]  Along with the joint tax return petitioner and intervenor submitted an installment agreement, signed by both parties, indicating they could pay $500 per month toward the outstanding liability reported on the 2006 Federal income tax return.

_____

[2]  In actuality, of the reported tax liability of $11,875, $3,138 was attributable to petitioner and $8,737 was attributable to intervenor.

On December 6, 2007, intervenor and her son moved out of the family home. Before moving out, intervenor established an apartment by setting up utilities and purchasing bedroom and living room furniture, using the money from the lump-sum Social Security benefits. Since moving out of the family home, intervenor has maintained her apartment, providing for all of the living expenses for herself and her son. From January 1, 2008, through August 2009, petitioner did not pay child support to intervenor. As of the time of trial, petitioner and intervenor have an agreement under which $834 is garnished from petitioner's paycheck for child support; however, petitioner remains approximately $10,000 in arrears for child support.

On February 5, 2008, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief, under section 6015(f). Ultimately, respondent issued a final determination denying petitioner's request for relief under section 6015(f).

## Discussion

In general, spouses may elect to file a joint Federal income tax return for a year even if one spouse had no obligation to file a return for that year. Sec. 6013(a). After electing to file a joint Federal income tax return, each spouse is jointly and severally liable not only for the entire tax due, but also for any deficiency subsequently determined, even if all income giving rise to the tax liability is allocable to only one of the

spouses.  Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000).  If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.  Except as otherwise provided in section 6015, the taxpayer bears the burden of proof to show his or her entitlement to relief.  Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

There are three types of relief available under section 6015.  In general, section 6015(b) provides full or apportioned relief from joint and several liability, section 6015(c) provides proportionate tax relief to divorced or separated taxpayers, and in certain circumstances section 6015(f) provides equitable relief from joint and several liability if relief is not available under subsection (b) or (c).

Petitioner did not request nor is petitioner entitled to relief under section 6015(b) or (c).

Section 6015(f)(1) permits relief from joint and several liability where "it is inequitable to hold the individual liable for any unpaid tax or a deficiency (or any portion of either)".  We review de novo petitioner's entitlement to equitable relief under section 6015(f).  See <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009).

Pursuant to section 6015(f), the Commissioner has prescribed revenue procedure guidelines to help IRS employees determine

whether a requesting spouse is entitled to relief from joint and several liability. See Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447. The Court consults these guidelines when reviewing the IRS' denial of relief. See <u>Washington v. Commissioner</u>, 120 T.C. 137, 147-152 (2003).

According to Rev. Proc. 2003-61, sec. 4.01, 2003-C.B. at 297-298, a requesting spouse must satisfy threshold conditions which include, inter alia, that the income tax liability from which the requesting spouse seeks relief be attributable to an item of the nonrequesting spouse, unless one of enumerated exceptions applies. The 2006 joint Federal income tax return reported a tax liability of $11,875, of which $3,138 is attributable to petitioner and none of the exceptions enumerated in Rev. Proc. 2003-61, <u>supra</u>, apply. Therefore, petitioner is not entitled to relief from joint and several liability under section 6015(f) for the portion of the liability that is attributable to him.

With regard to the remaining $8,737 of the reported tax liability that is attributable to intervenor, and taking into account the factors the Commissioner considers in such matters, see Rev. Proc. 2003-61, sec. 4.02 and 4.03, 2003-2 C.B. at 298, we find that it would not be inequitable to hold petitioner liable for the joint and several income tax liability that arises

from the 2006 joint Federal income tax return filed with intervenor. Accordingly, petitioner is not entitled to relief from liability under section 6015(f).

Little would be gained by burdening this opinion with a discussion of each of the factors contained in Rev. Proc. 2003-61, supra. See sec. 7463(a) (last sentence). Suffice it to note that petitioner has not demonstrated that he would suffer economic hardship if relief were not granted nor that he did not know and had no reason to know that intervenor would not pay the income tax liability. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii) and (iii), 2003-2 C.B. at 298. Moreover, petitioner agreed to and signed an installment agreement, under which he and intervenor agreed to make monthly payments of $500 toward their joint tax liability. Finally, given his business and tax acumen, petitioner undoubtedly knew that he could have filed a separate return and avoided joint and several liability for the tax attributable to intervenor's Social Security disability benefits.[3]

---

[3] In this regard, when asked by respondent's counsel at trial whether he knew he could file using the married filing separately filing status petitioner replied as follows:

MR. DAYE: Yes.

RESPONDENT: But you chose to do married, filing jointly anyway?

MR. DAYE: Yes, I did.

## Conclusion

We have considered all of the arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.